1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11

MERCEDES PERLAS, et al.,

No. C 09-4500 CRB

12

        Plaintiffs,

**ORDER GRANTING MOTION TO DISMISS**

13

  v.

14

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., et al.,

15
16

        Defendants.

17

————————————————————————/

18

      Plaintiffs allege in this putative class action that Defendants acted improperly in

19

foreclosing on thousands of homes across the county, including theirs.  Defendants now

20

move to dismiss, arguing that Plaintiffs fail to state claims for which relief can be granted.

21

      Plaintiffs attempt to make hay of the fact that Defendant Mortgage Electronic

22

Registration Systems, Ins. ("MERS") foreclosed on their property despite the fact that it does

23

not hold the mortgage note.  Plaintiffs compare two sets of facts: (1) facts suggesting that

24

MERS is the "beneficiary" of the note, and (2) facts suggesting that MERS is <u>not</u> the

25

beneficiary, and from this comparison argue that MERS was fraudulently holding itself out

26

as the beneficiary, despite having no legal rights as the beneficiary.  However, Plaintiffs'

27

allegations do nothing more than reflect that the deed of trust was inartfully drafted.  While

28

that deed in one place does refer to MERS as the beneficiary, the deed is elsewhere quite

1   clear that MERS's interest is technically that of a "nominee" of a lender.  In other words,

2   MERS acts as the agent of the lender.  Because there is no legal prohibition on a lender

3   authorizing an agent to initiate non-judicial foreclosure, MERS's conduct in those

4   foreclosures does not overstep its authority.  None of Plaintiffs' peripheral allegations–that

5   Plaintiffs were not given time to review the deed of trust, that California has a policy of

6   encouraging negotiated resolutions of mortgage defaults–are sufficient to undermine this

7   conclusion.  Given this context, Plaintiffs' overlapping claims under California's Consumers

8   Legal Remedies Act, California's Unfair Competition statute, and for fraud, are insufficient.

9        Plaintiffs also argue that MERS was ineligible to conduct business in California by

10   virtue of its failure to register with the Secretary of State.  MERS argues that it was not

11   obligated to register, and there is a split in the relevant legal authority.  Regardless, even

12   assuming MERS was obligated to register with the state, its failure has not caused any injury

13   to Plaintiffs.  There is no authority for the argument that because MERS was unregistered, its

14   contractual obligations are void.  In other words, the fact that MERS was unregistered does

15   not makes its foreclosing activities illegal, and therefore the failure to register did not itself

16   cause any harm to Plaintiffs.  The rule advocated by Plaintiffs would conflict both with

17   California precedent and with common sense.  Particularly now that MERS has in fact

18   registered with the state authority, which retroactively cures its supposed error, Plaintiffs fail

19   to allege any injury.  Therefore, failure to register does not give Plaintiffs a cause of action

20   under California law.

21                                                           **BACKGROUND**

22        Because this case comes before the Court on a motion to dismiss, this factual

23   recitation is taken solely from Complaint, in addition to judicially noticeable materials

24   submitted by Plaintiffs.  Plaintiffs Mercedes Perlas and Len Villacorta met with a

25   representative of GMAC in August of 2007 to discuss refinancing the mortgage on their

26   property.  First Amended Complaint ("FAC") ¶ 18.  They obtained a new loan at some point

27   in November of 2007, and on December 21, 2007, GMAC provided a note setting forth the

28   interest rate and monthly payments.  Id. ¶¶ 19-20.  GMAC also prepared a deed of trust

1   identifying GMAC as the "lender" and Executive Trustee Services, Inc. ("ETS") as the

2   trustee of the deed.  The deed also identified MERS as "a separate corporation that is acting

3   solely as a nominee for Lender and Lender's successors and assigns," but also states that

4   MERS is a "beneficiary" under the deed.  Id. ¶ 22.  Plaintiffs further allege that "[a]t no point

5   prior to the closing was it ever disclosed to Plaintiffs that MERS would be designated on

6   their Deed and registered with the county as the 'beneficiary' of the Deed."  Id. ¶ 23.

7   Moreover, they allege, "the closing was conducted by a 'drive-by' notary, who instructed

8   Plaintiffs to sign the Deed and other documents in rapid-fire succession without a chance to

9   review the terms contained therein."  Id. ¶ 23.

10      On June 9, 2008, First American Title Insurance recorded a notice of default and

11   election to sell under the Deed.  An officer of ETS signed the Notice, purporting to act as

12   agent for the supposed beneficiary, MERS.  Id. ¶ 25.  On September 12, 2008, "Plaintiffs

13   received documents entitled 'Beneficiary Instruction Pursuant to Civil Code §§ 2923.5 and

14   2924.8' and 'Beneficiary Declaration of Compliance With Civil Code § 2923.5(c) And

15   Authorization of Agent,' which identifies the beneficiary as GMAC."  Id. ¶ 26.  On or about

16   November 26, 2008, "Plaintiffs received a letter from ETS stating that ETS was instructed to

17   halt the foreclosure sale by 'Fannie Mae, the investor with respect to your loan,' to explore

18   alternatives to foreclosure."  Id. ¶ 27.  However, Plaintiffs have alleged that because of the

19   "false representation" in the Notice that MERS is the beneficiary of the Deed, "Plaintiffs

20   have been unable to promptly seek alternatives to avoid foreclosure."  Id. ¶ 29.

21                                   **DISCUSSION**

22      Plaintiffs assert three legal claims: (1) fraud; (2) violation of the Consumers Legal

23   Remedies Act, Cal. Civ. Code § 17500; (3) unfair competition under California Business and

24   Professions Code § 17200.  All three claims fail.

25   **1.  Legal Standard**

26      Under Rule 12(b)(6), a party may move to dismiss a cause of action which fails to

27   state a claim upon which relief can be granted.  On a motion to dismiss, all well-pleaded

28   allegations of material fact are taken as true and construed in the light most favorable to the

non-moving party.  <u>Wyler-Summit Partnership v. Turner Broadcasting System, Inc.</u>, 135 F.3d 658, 661 (9th Cir. 1998).  To survive a Rule 12(b)(6) motion to dismiss, the complaint must state a claim to relief that is "plausible on its face."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  A claim has "facial plausibility" when the pleaded factual allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id</u>.  Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id</u>.  Despite the requirement that factual allegations in the complaint be taken as true, a legal conclusion "couched as a factual allegation" need not be accepted.  <u>Id</u>.

For claims grounded in fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).  In order to satisfy this standard, allegations must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'"  <u>Swartz v. KPMB LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007) (quoting <u>Edwards v. Marin Park, Inc.</u>, 356 F.3d 1058, 1066 (9th Cir. 2004)).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleadings was made, unless amendment would be futile.  <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect "without contradicting any of [the] original complaint."  <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990).  Leave to amend should be liberally granted.  <u>Id</u>. at 296-97.

**2. Fraud**

Plaintiffs allege that MERS did not have "standing to bring" foreclosure proceedings against Plaintiffs, and that, relatedly, MERS violated California Civil Code § 2924(a)(1)(C), which governs non-judicial foreclosures.  That section provides that the "trustee, mortgagee, or beneficiary, or any of their authorized agents" shall include in the notice of default "[a] statement setting forth the nature of each breach *actually known to the beneficiary*."  FAC

United States District Court
For the Northern District of California

¶ 32.  Plaintiffs allege that, because MERS was not technically the beneficiary of the loan, it was "impossible for MERS to actually know of any breaches of obligation under Plaintiffs' promissory note. . . .  MERS is not entitled under the Deed to collect monthly payments on Plaintiffs loan, and therefore can have no knowledge of a breach."  Id.  They also argue that because MERS is not in reality the lender and has never possessed the note itself, it therefore does not have the authority to initiate foreclosure.  This is corroborated, argue Plaintiffs, by the terms of the Deed.  The Deed clarifies that "beneficiary" is essentially an empty title, and that only the Lender itself is competent to initiate foreclosure proceedings.  See id. ¶ 33-34.  It is further corroborated, argue Plaintiffs, by the MERS "Rules of Membership."  These rules provide that:

> With respect to each mortgage loan for which [MERS] is the mortgagee of record, the beneficial owner of such mortgage loan or its servicer shall determine whether foreclosure proceedings with respect to such mortgage loan shall be conducted in the name of [MERS], the name of the servicer, or the name of a different part to be designated by the beneficial owner.

Id. ¶ 35 (quoting MERSCorp, Inc. Rules of membership, Rule 8 Foreclosure, Section 1(a), at 25).

Despite repeatedly referring to MERS's conduct as "fraudulent," Plaintiffs fail to satisfactorily allege a cause of action for fraud.  This would be so even if the complaint were being judged solely under Rule 8, and it is even more apparent under the heightened pleading standard of Rule 9.

The gravamen of Plaintiffs' claims is that Defendants did not have the legal right to initiate foreclosure proceedings.  This is shoe-horned into a fraud claim by arguing that Defendants' failure to disclose their true status–which did not give them authority to foreclose–was itself a material omission upon which Plaintiffs relied, giving rise to fraud.  First, Plaintiffs' misstate California law as to MERS's right to foreclose.  While Plaintiffs are no doubt correct that California law provides that "[t]he assignment of a debt secured by mortgage carries with it the security," Cal. Civ. Code § 2936, this in no way settles the issue of who has the right to initiate foreclosure.  A case cited repeatedly by Plaintiffs explains why this is so.

United States District Court
For the Northern District of California

1  In short, a nominee is an agent with limited powers, akin to a special power of attorney. . . .
2  The trouble typically begins when a nominee substitutes a new trustee on the deed of trust,
   which it has the right to do as the holder's nominee.  The substituted trustee then forecloses
   when the mortgagor/trustor defaults on the promissory note.  The mortgagor/trustor then
3  complains that the foreclosing trustee is acting wrongly because it does not itself hold the
   promissory note, or because it was not the original trustee on the deed of trust, or because
4  the foreclosing trustee was substituted by an entity (usually MERS) that was not an agent of
   the original or subsequent holder of the note. . . .  But one thing is clear: so long as the note
5  is in default and the foreclosing trustee is either the original trustee or has been substituted
   by the holder of the note <u>or the holder's nominee</u>, there is simply no defect in foreclosure,
6  at least in states such as Nevada where a trustee may foreclose non-judicially.

7  <u>Weingartner v. Chase Home Finance, LLC, et al</u>, 2010 WL 1006708, No. 09-2255 (D. Nev.

8  March 15, 2010).  California, like Nevada, permits non-judicial foreclosure.  <u>See</u> <u>Farahani v.</u>

9  <u>Cal-W. Reconveyance Corp.</u>, No. 09-194, 2009 WL 1309732 (N.D. Cal. May 8, 2009).

10        California law also explicitly permits the holder of the note to authorize a third party

11  to commence foreclosure proceedings.  California Civil Code § 2924(a)(1) provides that

12  foreclosure proceedings are commenced when a "trustee, mortgagee, or beneficiary, <u>or any of</u>

13  <u>their authorized agents</u>" files a notice of default (emphasis added).  There is no requirement

14  in California that the foreclosure be initiated by the lender itself.  Therefore, Plaintiffs'

15  assertion that MERS is categorically ineligible to foreclose on Plaintiffs' property is

16  incorrect.  While it is true that MERS would not have the authority in the absence of note-

17  holder's authorization, Plaintiffs' complaint nowhere alleges that MERS acted without

18  authorization.  While Plaintiffs are correct that the deed of trust was not drafted with much

19  care, <u>see</u> <u>Weingartner</u>, 2009 WL at 2-3 (discussing the misleading use of the term

20  "beneficiary"), this does not undermine MERS's legal capacities under its contract with the

21  lender.

22        Given this conclusion, the remainder of Plaintiffs' fraud claim must fail. First, while

23  there is indeed some ambiguity in the terms of the deed of trust, there is no actionable

24  omission.  The deed of trusts states, in part, that:

25  The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and
    lender's successors and assigns) and the successors and assigns of MERS. . . .  Borrower
26  understands and agrees that MERS holds only legal title to the interests granted by
    Borrower in this Security Instrument, but, if necessary to comply with law or custom,
27  MERS (as nominee for Lender and Lender's successors and assigns) has the right: to

28

exercise any or all of those interests, including, but not limited to, <u>the right to foreclose and sell the Property</u>.Opp, ex. 1, at 4 (emphasis added).[1]

Plaintiffs initialed the deed of trust on each page.  Their initials are visible directly below the above-quoted sentence.[2]  Given this disclosure, it is unclear exactly what else Plaintiffs expected to be told.  In their opposition, Plaintiffs point to the fact that MERS did not disclose that it, not the lender, would be registered with the county as the beneficiary of the deed.  But MERS did disclose that it would "hold legal title," and that it would have the authority to foreclose in the event of default.  Details as to what documents are recorded with the county can hardly be material given these disclosures.  Plaintiffs also point to the fact that MERS misrepresented "on the notice of default that it 'actually knows' the nature of the breach of obligation."  Opp. at 4.  First, this alleged misrepresentation would have happened upon receipt of the notice of default, not at the initiation of the loan.  Plaintiffs have not even attempted to allege required elements of fraud relating to the notice of default, but rather have focused on the deed of trust.  This shift in direction serves only to confuse their position, not to strengthen it.

Second, Plaintiffs fail to allege how this was a misrepresentation.  The best Plaintiffs can do is to allege that, because MERS did not hold the note and did not receive monthly payments, it <u>could not have known</u> the nature of the breach of obligation.  Because California law requires the foreclosing party to know the nature of the breach, Plaintiffs argue MERS breached California law.  <u>See</u> Cal. Civil Code § 2924.  But Plaintiffs allegations on this point make no sense: just because MERS did not itself receive the monthly payments, it is irrational to conclude that it therefore could not have known of a breach.  And in any event,

---

[1]  Plaintiffs themselves have submitted the Deed of Trust as an exhibit to their Opposition brief.  Even though the Deed is not attached to the complaint, it is referred to repeatedly and is therefore properly the subject of judicial notice.  <u>See</u> <u>Coto Settlement v. Eisenberg</u>, 593 F.3d 1031, 1038 (9th Cir. 2010)

[2]  While Plaintiffs do allege that they were not given time to review the documents, this does not aid them in their claim against MERS.  MERS, as repeatedly alleged by Plaintiffs, was not represented by any agent at the signing of the loan documents.  Nor have Plaintiffs alleged that there is any basis for vicarious liability tracing from the GMAC agent to MERS.  If indeed Plaintiffs were not given time to review the documents, any resulting claim would lie against the agent and GMAC.  Without further allegations, there is no basis to extend liability to MERS.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    such allegations do not add up to fraud: there are no allegations as to how Plaintiffs relied

2    upon the notice of default, as opposed to the deed of trust.

3    **3. Consumer Legal Remedies Act**

4        Plaintiffs' complaint also fails to allege a cognizable violation of the Consumer Legal

5    Remedies Act.  Plaintiffs allege the Defendants violated Civil Code sections 1770(a)(7) and

6    1770(a)(16).  Section 1770(a)(7) prohibits "[r]epresenting that goods or services are of a

7    particular standard, quality or grade or that goods are of a particular style or model, if they

8    are not."  Section 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has

9    been supplied in accordance with a previous representation when it has not."

10        First, in light of the discussion above, Plaintiffs have failed to point to any

11   representation that satisfies these statutory requirements.  Plaintiffs were informed that

12   MERS was the lender's nominee in the deed of trust, and were informed that MERS had the

13   right to foreclose.  While the deed of trust did not clearly define the term "beneficiary" as

14   opposed to the term "nominee," Plaintiffs do not allege how this ambiguity could have been

15   material.  First, as explained above, Plaintiffs are incorrect in asserting that California law

16   makes the distinction material.  State law permits either party to commence foreclosure

17   proceedings.  Second, regardless of California's regulation of foreclosure proceedings, it is

18   undisputed that Plaintiffs were told that MERS could initiate foreclosure.  Plaintiffs are

19   not–likely because they cannot–suing directly under statutory provisions that regulate

20   mortgages and non-judicial foreclosures.  Instead, they sue under a consumer protection

21   statute, and the import of this statute turns not on the propriety of foreclosure, but on the

22   accuracy of Defendant's statements.  Because there is no misrepresentation as to the nature

23   of the "goods," there is no liability under CRLA.

24        Moreover, Plaintiffs have failed to allege that they are, in this context, consumers

25   entitled to protection.  Section 1770(a) provides that the CRLA applies only to a transaction

26   "intended to result or which results in the sale or lease of goods or services to any consumer."

27   Courts have held that the statute "does not typically apply to mortgage loans, which are

28   neither goods nor services."  Reynoso v. Paul Financial, LLC, et al., No. 09-3225, 2009 WL

3833298, at *9 (N.D. Cal. Nov. 16, 2009).  See also Fairbanks v. Sup. Court, 46 Cal. 4th 56, 65 (2009) ("Using the existence of these ancillary services to bring intangible goods within the coverage of the Consumers Legal Remedies Act would defeat the apparent legislative intent in limiting the definition of 'goods' to include only 'tangible chattels.'").  Plaintiffs fail to address Reynoso's contrary holding, and it is persuasive.

**4. Unfair Competition Law**

California's Unfair Competition Law ("UCL") forbids any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  UCL claims are "derivative of some other illegal conduct or fraud committed by a defendant."  Lomboy v. CME Mortgage Bankers, No. 09-1150, 2009 WL 1457738, at *6 (N.D. Cal., May 26, 2009). Plaintiffs allege that MERS committed an unlawful business practice "by virtue of" the alleged violations of the CLRA, California Civil Code §§ 2924 and 2923.5, and California Corporations Code section 191.  As discussed above, Plaintiffs have failed to allege a violation of the CRLA or §§ 2924 and 2923.5 of the Civil Code, and so the derivative UCL claim based on those alleged transgressions fails as well.

The UCL claim premised on violation of the Corporations Code, however, requires a different analysis.  California Corporations Code § 2105 provides that "[a] foreign corporation shall not transact intrastate business without having first obtained from the Secretary of State a certificate of qualification."  Plaintiffs allege that MERS is such a foreign corporation, and that it has failed to obtain a certificate of qualification.  Defendants do not dispute that they have no such certificate, and concede that they are a "foreign corporation." However, they argue that they are exempt from § 2105.

Resolution of this question turns on an intricate analysis of various statutes.  While the more persuasively reasoned opinions suggest that Plaintiffs have the better of this argument, see, e.g., Carter v. Deutsch Bank Nat. Trust Co., No. 09-3033, 2010 WL 424477 (N.D. Cal., Jan. 27, 2010); Champlaie v. BAC Home Loans Servicing, LP, No. 09-1316, 2009 WL 3429622 (E.D. Cal. Oct. 22, 2009), the question is ultimately immaterial.  Even assuming MERS was required to register, the fact that it did not does not void the actions it took.

United States District Court
For the Northern District of California

1   Therefore there is no basis upon which to conclude that Defendants' violation of the statute

2   harmed Plaintiffs.  And because they have not been harmed, Plaintiffs have no claim under

3   the UCL.  Moreover, because MERS has now registered with the California Secretary of

4   State, any prior activity is retroactively validated.

5        Plaintiffs allege that because MERS was not registered, they are entitled to recover as

6   damages the cost associated with the "wrongful" foreclosure.  However, Plaintiffs are only

7   entitled to recover damages personally suffered as a result of a violation of a statute.  See

8   Peterson v. Cellco P'ship, 164 Cal. App. 4th 1583, 1590-91 (2008).

9        Plaintiffs argue that they are entitled to recover the costs associated with foreclosure

10  because, by virtue of its failure to register, MERS was not authorized to conduct the

11  foreclosure.  However, the failure to register did not lead to the foreclosure, or, put another

12  way, the failure to register did not cause the injury alleged.  Plaintiffs suggest that because

13  MERS was not permitted to conduct business at the time it foreclosed on their home, that

14  foreclosure if voidable, and their costs are therefore causally connected to the failure to

15  register.  However, there is no support for this sweeping conclusion.  First, the statute itself

16  provides for a $20 per day penalty, and further notes that an unregistered foreign corporation

17  cannot maintain "any action . . . upon any intrastate business . . . in any court of this state."

18  Cal. Corp. Code § 2203.  The statute does not provide that contracts entered into by a foreign

19  corporation are voidable because of the lack of registration.  Moreover, California courts

20  have explained that the "purpose of the certificate of qualification is to facilitate service of

21  process and to protect against state tax evasion."  United Medical Management Ltd. v. Gatto,

22  49 Cal. App. 4th 1732, 1741 (1996).  Courts have never found that the registration

23  requirement exists to protect consumers from out-of-state corporations.  The claim asserted

24  by Plaintiffs has nothing to do with either service of process or tax evasion, and would

25  haphazardly expand the penalties for non-compliance with § 2105.

26       Second, California courts have held that an unregistered corporation, upon registering,

27  is "restored to full legal competency and [has] its prior transactions given full effect."  Gatto,

28  49 Cal. App. 4th at 1741.  As of July 21, 2010, MERS is registered to conduct intrastate

business in the State of California.  <u>See</u> Dkt. #53.  Therefore, MERS is entitled to have "its prior transactions given full effect."  It would be entirely contrary to California law to permit Plaintiffs to maintain a UCL action where MERS has received the benefit of this retroactive validation.

Plaintiffs also argue that the lack of registration harmed them by frustrating their ability to contact MERS in order to discuss non-foreclosure opportunities.  Plaintiffs' Supplemental Memo at 3.  This argument is unavailing.  First, there is no allegation in the Complaint that Plaintiffs ever attempted to contact MERS, frustrated or otherwise.  Second, the deed submitted by Plaintiffs lists a phone number for MERS.  Therefore, there is no factual basis alleged in the complaint for the conclusion that Plaintiffs' only way to obtain MERS's contact information was through the California Secretary of State.

CONCLUSION

For the reasons explained above, Plaintiffs' complaint is DISMISSED with leave to amend as to fraud.  As to the claims under the CRLA and claims dependent on § 2105, there is no reason to believe that any further factual allegations could remedy the fundamental legal deficiencies of these claims.  Therefore, dismissal of those claims is WITH PREJUDICE.  An amended complaint, if Plaintiffs wish to file one, will be due August 18, 2010.

**IT IS SO ORDERED.**

Dated: August 5, 2010

_____
CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California